Our final case for argument today is 22-2272, MIRA Advanced Technology Systems v. Google. Mr. Ma, please proceed when you're ready. May I please the court? My name is JD Ma. I'm arguing on behalf of the MIRA Advanced Technology Systems. This case has only one issue right now. Basically, it's the patent eligibility issue. And it involves a technology that actually would not come until after the Internet and the mobile devices. So it's not a case of doing something that has been around for many, many years before Internet age or network age. And the technology is something like this. A reminder is set with regard to location. And when the user brings their mobile device, which matches the GPS coordinates, a reminder will pop up. And conceptually, it's a very quick concept. However, there's one element that can have millions or myriads of implementations, which is the GPS setting. The reason why this element... Counsel, when you say there's one element, the GPS setting, the problem is you've defined the GPS setting as including, you said in your brief, everything in italics. And that was like so much of the claim. And this is a very long claim. What exactly is the element within Claim 1 which maps to the GPS setting? How can I understand? You can only understand by functions in a nutshell. Basically, the purpose is that a user can set, for example, a GPS coordinate for a location. Like an example of a location, GPS information is 77.12345. Okay, but when you say I can only understand it by... You're not actually focusing on the claim language, which I was kind of hoping you would do. But when you say that I can only understand it by functions, so you're suggesting... First off, that seems to be the admission, which I think is correct, that there is no special technology here. The GPS setting element is not some special new piece of hardware, for example, with something specialized about it, right? Well, the GPS capturing does have a device called a GPS chip. So in other words, an on-board GPS... But you didn't invent that. No, no, no, no. That's in the cell phone, right? Yeah. That's in the cell phone. Exactly. Are you just talking about basically... I mean, there may be other things, but if you want to set a reminder to get milk at the Safeway, you look up the Safeway's address, you put it in, and when you bring the phone to the Safeway, a reminder will pop up and say, get milk. Well, that's the end result, but the process is not as simple. For example, there's this element, GPS setting element. The reason why it's indispensable is because you have to pre-set it, because if you don't pre-set it, then there's no reminder will pop up. But the problem is pre-setting is not that straightforward. For example, an easiest way of... What do you mean the user pre-sets the GPS setting? Yeah. The user pre-sets the GPS coordinates. Yeah. By using the functionality. Let's just talk about using a cell phone. Okay. Using the functionality that's already in a cell phone, right? Yes. The cell phone knows if you enter an address, you can assign a GPS coordinate. Well, the problem is... I don't mean to interrupt. The problem is the cell phone doesn't have that functionality. The only functionality at the time the cell phone has is it can capture the GPS coordinates when you walk to that location. And then the software will say, hey, now are you in this location? Yes, I am. Okay, now I'm going to get the data from the GPS on board. And then that will avoid the user from typing 77.12345 or 72.1285 because that's a lot of burden. And this is in the prior. The reason why this is so relevant to the... Are you saying this patent invented the idea of inputting GPS coordinates into a phone in advance of being at those GPS coordinates? I beg your pardon? I'm trying to figure out what you said you invented. And you're talking about pre-setting. But what is pre-setting? Isn't it just entering an address in the phone and then the phone talks to some kind of database? You didn't invent that database, right? Well, no, no. Absolutely not. You see, that precisely tells us... Did you? No, no, no. Let me finish. Did you invent the idea of the phone talking to that database in advance of going... No, absolutely not. Absolutely not. But... What did you invent then? What's invented is that the user doesn't really have to walk to that location. Using the GPS coordinates to capture the location so that the software can set the... That's what I just asked. If you input... Look, if I use the search engine and look up an address on my phone... You can do that. Then you will take five steps. This is what you do. You're going to say, hey, let's type something that uniquely identifies this address or this location. Oh, then the Google will come up and say, hey, it is 72.134. Then you've got to launch a user interface that you type. The latitude is 72.1234. The longitude is 73.134. But that's burdensome. That is burdensome. That is why the prior think of everything they can do so that the user does not have to type there. The way they came up with is that the user can only walk to that location beforehand, before they can complete that GPS setting algorithm. But your invention, I understand it, is you don't have to walk to that location. No, you don't. You're saying you also don't have to type in all the coordinates. You don't. How is that a technological improvement? Because it's something not in the prior. It may sound simple after the fact. Just like Judge Moore mentioned in another case before, it may sound simple after the fact, but here the issue is that that system, that functionality has been around for five years, and nobody really came up with something like that. It may be simple. It may be difficult. It may be new. It may be not new. But how is it anything other than just automating what people did in a manual world before the kind of thing that we've said is not eligible for patent? Because it's something that after the fact people know it, but before the fact people don't know it. And the best evidence is the prior, because that's what we focus on. The prior doesn't have that feature, although they have every single opportunity to come up with it. That sounds like an obviousness argument. How does that help you at step one or step two? What helps us is because that shows it's not something that has been around for many years before the Internet. For example, like in the Bilski case, hedging has been around for thousands of years. So this is something that's after the Internet age, there's already an established field, it's an existing field, so we made the improvement in that field. And infish jurisprudence is our side, because an improvement put in fish is a very good indicator, if not the absolute indicator to show that it's patent eligible, because we're not talking about obviousness here. We're not talking about how easy this function is. We're talking about eligibility. I'm still confused about what you said you've invented. Let me take one more stab at it. We're talking about your invention is you can preset the GPS coordinates without being there. Yes. How does it do that? Basically, the way to do that is through user interfaces, specifically tailored so that they can leverage the geocode database, which has been around for many years. That sounds like jargony stuff that doesn't mean anything to me. Because the database has been around. You didn't invent the GPS database. And you didn't invent the idea of setting a reminder to buy something when you go someplace. I mean, I do that with a piece of paper, or now I do it on my iPhone with the notes section. But you didn't invent that. So what you invented is instead of looking up the GPS coordinates, you do some other thing, and it translates it to the GPS coordinates? No, what we invented is an easy way to utilize what's already around so that the user can… That sounds like an idea, an abstract idea. That's not, because we're in an existing field. That's an improvement in an existing field. I said I was going to give it one more try. I'm going to give it one more try. Say specifically, without jargony interfaces or things, what you invented. What we invented is a way that the user doesn't have to travel to the location and can comfortably use their mobile device to somehow leverage something existing already and then have the data stored in that entry. Somehow, some way, leverage something. I mean, you can't even define what you invented with any specificity. It's the abstract idea of using preexisting technology to identify a location in advance. Well, the… You didn't actually… The specifics… It's very broad. To the extent you've said anything, you've said very broad, functional ideas without explaining that. And whenever we see very broad, functional language to do it on preexisting computer equipment, it's ineligible, isn't it? No, Jana. Actually, it's very specific. It's in the claim language. So that's why the devil is in all the details. Here's the thing. If there's no claim language right there, you can say what you said. But here's the thing is that just you have this geocode database is not enough. You have to contact it. You have to present a user interface to guide the user so the user eventually will come to a screen where they know that's exactly uniquely identified the location. And then once they hit that submit button, then they will get whatever the number stored in that entry. If we disagree with you at step one and say it is an abstract idea, do you have any evidence, any allegation, any argument at step two that could save us? Yes, we do. But our key strength is step one. For step two, yes, I understand. For step two, basically our argument is that we already had a piece of evidence which is prior blast that at least showed that what we did is not something that's well understood in a routine convention. And I think that piece of evidence is more than enough to show, especially in the Buckheimer versus HP. So it's just the prior art that somehow shows that what you did is not well understood. Because that prior art does the exact same thing except the GPS setting element to the pattern that we applied. Thank you. Okay. Should we save the rest of your time for rebuttal? Yes. Okay, Mr. Trask. Thank you. Good morning and may it please the Court. Andrew Trask for Google. Google explained in its briefing why the district court correctly determined that the claims of Myra's patent are ineligible under Section 101. And we also explained why the arguments Myra raised on appeal are also unavailing. I didn't hear anything today that required separate argument by Google. Of course, if the Court has any questions at all about this case, I'd be happy to address them. Otherwise, Your Honor. I have a few questions. So today I heard that the invention is maybe the user does not have to enter the GPS coordinates. That may have been a new argument, but assuming you can tell me if it's not in the record, but assuming that argument is before us, why does that not help them at step one and maybe at step two? So I don't think that that argument has been raised previously, but I don't think it changes the analysis. So what I heard Myra's counsel say, which has been their position all along, is that the only advance of technology here, the only claimed advance over the prior art, which is the proper analysis under step one, is removing the need for someone to travel to the location in order to obtain GPS coordinates. And as it's been explained all along in this case, the prior technology involved physically traveling to a location of interest and then obtaining the GPS coordinates using standard smartphone GPS technology. What Myra now claims is that its advance over the prior art is removing the need to travel to that location and simply obtaining the GPS coordinates through a remote database, which is something that Myra also didn't invent. So it's the same act of acquiring the GPS coordinates, whether you- Just out of curiosity, I mean, is it basically like this GPS database I look up Safeway? I mean, the average person, me, I don't know GPS coordinates for the Safeway, so I don't know them in terms of longitude and latitude. So out of curiosity, how does it work? I understand, you know, cell phone, you get there and it recognizes you're there, but what is this geodatabase and how exactly under this patent do they- does it allow the user to access those codes in advance through the preset process? Right, so the geocode database is a listing of addresses or store names along with accompanying GPS data. This is something that existed in the prior art. It was known to be used remotely with a smartphone. And so a user could, for example, enter Safeway, a particular Safeway, and then retrieve the GPS coordinates that are corresponding to that Safeway from the geocode database. This is technology that was known and conventional in the prior art. So you just type in the address and the cell phone knows to contact the database and get the GPS coordinates. Exactly, exactly. It's a remote database with location information for addresses and corresponding GPS coordinates. So the claim to advance over the prior art here is instead of going to the location and having your phone detect the GPS coordinates of the Safeway- But they didn't invent the database. Correct. Did they invent the idea of getting the GPS coordinates in advance of going to? And if they did, is that just an abstract idea or is that a tangible improvement? So I don't think Judge Hughes that they even invented the idea of obtaining the GPS coordinates from a remote database. And the patent itself, which can be considered on a motion to dismiss, acknowledges this. So it's Appendix 127, Column 3, approximately line 20. The patent says, in communication devices without- I think it's a typo here, it should say GPS receiver- GPS coordinates corresponding to physical address contained in contact list can be obtained from one of existing providers via a web server. So the patent itself is acknowledging that there are existing providers at the time that could allow you to query the database and return GPS coordinates. This is not something that's alleged in the complaint or in the patent to be something that's new or in advance over the prior art. The only alleged advance here is not obtaining GPS coordinates, but rather removing the need to physically travel to the location. And frankly, this is something that happens all the time without computers at all. If I'm leaving the house with my son to run errands and I say, hey, as we're leaving the house, remind me to pick up milk when we get to Safeway. I have set a location-based reminder without traveling to the Safeway to obtain that location. So this is fundamentally an abstract idea. There's no plausible advance in computer technology under Step 1 or under Step 2, Judge Stardust. What is your understanding of this Step 2 argument based on the BLAST prior art reference? I think the argument under Step 2 is that the technology embodied by the claims is somehow not well understood, routine, and conventional because it's not in the prior art. That is not the test that this court applies. The question is whether there is any advance in computer technology embodied by the claims that amounts to an inventive concept beyond the abstract idea itself. And the components here, of course, are admittedly disclosed in the prior art. The database is obviously kind of the crux to what Myra is arguing here. This court's cases say repeatedly, the Intellectual Ventures versus Erie case says, sending and receiving information to execute a database search is a routine computer function and no more than the performance of well-understood routine and conventional activities. The patented issue in that Intellectual Ventures case had a 1999 priority date. The patent here has a 2008 priority date, almost a decade later. So this court has repeatedly held that basic functionality like databases is insufficient to supply a well-understood non-routine technology under Step 2. And even cases like the OIP versus Amazon case said relying on a computer to perform a routine task more quickly or more accurately is insufficient under Step 2. And that's exactly what's happening here. One thing I thought was curious about the district court's opinion was it seemed to rely pretty heavily on district court decisions and even refer to them as like authority in this circuit. Is that how Google argued in the district court? That is relying on district court decisions as opposed to many, many federal circuit decisions at this point under Allison Mayo? No, Your Honor. We cited a number of federal circuit cases, many of the same cases that we cited in the briefing to this court. Demonstrating why claims that are similar to Myra's are abstract under Section 101. We did also cite to one district court case, the Calamp case from the Eastern District of Virginia, which is where this case originated before it was transferred to the Southern District of New York. We cited that case not because it was binding on the district court. It's certainly not binding on this court. But the claims are very similar from a technological standpoint to the claims at issue here. They involve monitoring the location of a smart device, detecting when it enters a location of interest, and then retrieving information from a remote database. So quite similar to what's at issue here. The court in the Eastern District of Virginia invalidated those claims under Section 101. The case settled before it got up on appeal to this court. But we cited that case not because it was somehow binding on the Southern District of New York, but simply because it was what we viewed as a highly analogous case. But the district court's reliance on other district court cases, in its opinion, we don't view as problematic. This court often looks to technology in other cases that is kind of similar to determine whether it may be valid under Section 101. And I think that's what the district court did here. It certainly was also citing Federal Circuit cases. And many of the citations to district court cases were instances where the district court was quoting Federal Circuit case law as well. Nothing further. Thank you, Your Honor, for your time. Your Honor, I'll make it really quick. First, let me address my colleague's mention about he and his son will routinely go to a supermarket, write down something, and then somehow they're going to be reminded. That actually only proves our point. Because if he was doing that pre-Internet, pre-network, then that's not applicable to this case. But if he's doing that post-Internet, post-network, that proves our point. Because at that time, this field has been established. And there's already prior, which is what he did, what my colleague did. And we just improved that so that the user doesn't have to physically travel to that location, write down something. They can just directly from the comfort of their home and just using what we already got, for example, the geocode database, the concept of communication through networking, and also the concept of user interface to provide something. And when that incorporates into the software associated with reminder entry, boom, an application was born. Although it sounds simple, that should be an issue of obviousness or anticipation, but it shouldn't be an issue of patent eligibility. Because Infish made it very clear. And in fact, if this decision is not reversed, it could run contrary to Infish, which is if in an existing field, network and technology, if an improvement is clearly made without any question, that improvement is made, and that's patent eligible. It may not be obvious. It may not meet the criteria of obviousness or non-obviousness or anticipation. But at least for that issue of patent eligibility, it is patent eligible. So we urge this court follow the Infish and other jurisprudence and reverse the district court's decision on this issue. Thank you. Thank you, Mr. Mao. We thank both counsel. Case is taken under submission.